FELDESMAN LEIFER LLP
Kathryn E. Doi (SBN 121979)
400 Capitol Mall, Suite 2580
Sacramento, CA 95814
T. 916.500.0755
F. 916.500.0748
kdoi@feldesman.com

FELDESMAN LEIFER LLP
Matthew Sidney Freedus (DC 475887)*
Brendan M. Tyler (DC 1672687)*
1129 20th Street NW, 4th Floor
Washington, DC 20036
T. 202.466.8960
F. 202.293.8103
mfreedus@feldesman.com
btyler@feldesman.com

*Admitted *pro hac* vice

*Attorneys for Defendant*
*Petaluma Health Center, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THURMAN JOHNSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PETALUMA HEALTH CENTER, INC.<br><br>*Defendant.* | Case No.:  3:23-cv-03777-VC<br><br>**OPPOSITION TO UNITED STATES' MOTION TO REMAND**<br><br>Date: April 24, 2025<br>Time: 10:00am<br>Location: Courtroom 4, 17th Floor |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL AND LEGAL BACKGROUND .............................................................2

    A.  Petaluma's Deemed Federal Employment and Absolute Immunity................2

    B.  Factual and Procedural Background ................................................................4

ARGUMENT ..............................................................................................................5

I.    Plaintiff Waived Procedural Objections Under 28 U.S.C. § 1447..................5

II.   Petaluma Propery Removed This Case Pursuant To 28 U.S.C. § 233(*l*)(2) ..........................7

III.  Petaluma Propery Removed This Case Pursuant To 28 U.S.C. § 1442(a)(1) ....................12

CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan*,
    986 F.3d 168 (2d Cir. 2021)..................................................................................12, 13, 14

*Blumberger v. Tilley*,
    115 F.4th 1113 (9th Cir. 2024) ................................................................ *passim*

*BP P.L.C. v. Mayor and City Council*,
    593 U.S. 230 (2021)..................................................................................................14

*C.K. v. United States*,
    No. 19-CV-2492, 2020 WL 6684921 (S.D. Cal. Nov. 12, 2020)..........................10

*Colorado v. Symes*,
    286 U.S. 510 (1932)..................................................................................................12

*Corona-Contreras v. Gruel*,
    857 F.3d 1025 (9th Cir. 2017) ..................................................................................6

*De Martinez v. Lamagno*,
    515 U.S. 417 (1995)....................................................................................................9

*Doe v. Cedars-Sinai*,
    106 F.4th 907 (9th Cir. 2024) ..................................................................................14

*Doe v. Neighborhood Healthcare*,
    No. 21-cv-1587, 2022 WL 17663520 (S.D. Cal. Sept. 8, 2022) ......................10, 11

*Ford v. Sandhills Med. Found., Inc.*,
    97 F.4th 252 (4th Cir. 2024) ....................................................................................11

*Friedenberg v. Lane County*,
    68 F.4th 1113 (9th Cir. 2023) ..............................................................1, 10, 12, 13

*Hui v. Castaneda*,
    559 U.S. 799 (2010)..............................................................................................2, 7

*In re Allstate Ins.*,
    8 F.3d 219 (5th Cir. 1993) ........................................................................................6

*Kashin v. Kent*,
    457 F.3d 1033 (9th Cir. 2006) ................................................................................10

*Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*,
346 F.3d 1190 (9th Cir. 2003) ........................................................................6

*Kezer v. Penobscot Cmty. Health Ctr.*,
No. 1:15-cv-00225, 2019 BL 141566 (D. Me. Mar. 21, 2019) ................................11

*Kidder v. Richmond Area Health Ctr.*,
595 F. Supp. 2d 139 (D. Me. 2009) ..................................................................15

*Krandle v. Refuah Health Ctr., Inc.*,
No. 22-CV-4977, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024) .................7, 10, 11

*L.J.C. v. Dignity Health*,
2024 WL 4648147 (C.D. Cal. Oct. 31, 2024) ......................................................7

*Mele v. Hill Health Ctr.*,
2008 WL 160226 (D. Conn. Jan. 8, 2008) ..........................................................11

*Mesa v. California*,
489 U.S. 121 (1989) ......................................................................................13

*Nichols v. Sabzwari*,
No. 17-cv-01621, 2017 WL 6389634 (D.S.C. Nov. 13, 2017) ................................15

*Oviedo v. Halbauer*,
655 F.3d 419 (5th Cir. 2011) ..........................................................................15

*Page v. City of Southfield*,
45 F.3d 128 (6th Cir. 1995) ............................................................................6

*Rosenblatt v. St. John's Episcopal Hosp.*,
2012 WL 294518 (E.D.N.Y. 2012) ....................................................................15

*United States v. Alkaabi*,
223 F.Supp.2d 583 (D.N.J. 2002) ....................................................................6

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) ......................................................................................12

*Wecker v. Nat'l Enameling & Stamping Co.*,
204 U.S. 176 (1907) ......................................................................................15

*Willingham v. Morgan*,
395 U.S. 402 (1969) ...................................................................................1, 12

**Statutes**

28 U.S.C. § 517 ............................................................................................6

28 U.S.C. § 1442 .............................................................................................................1, 14

28 U.S.C. § 1442(a)(1) ........................................................................................... *passim*

28 U.S.C. § 1446(b) .......................................................................................................... 6

28 U.S.C. § 1447 .............................................................................................................. 5

28 U.S.C. § 1447(c) .......................................................................................................... 6

42 U.S.C. § 233(a) ................................................................................................ *passim*

42 U.S.C. § 233(c) ......................................................................................................3, 10

42 U.S.C. § 233(g)(1)(A) ............................................................................................1, 3, 8

42 U.S.C. § 233(g)(1)(D) ................................................................................................. 3

42 U.S.C. § 233(g)(1)(E) ................................................................................................. 3

42 U.S.C. § 233(g)(1)(F) .............................................................................................2, 3, 8

42 U.S.C. § 233(g)(4) ...................................................................................................... 3

42 U.S.C. § 233(g)(5) ...................................................................................................... 8

42 U.S.C. § 233(*l*)(1) ............................................................................................. *passim*

42 U.S.C. § 233(*l*)(2) ............................................................................................. *passim*

42 U.S.C. § 254b ........................................................................................................3, 12

Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, 84 Stat. 1868
    (1970) ...................................................................................................................... 2

**Other Authorities**

*Colorable Claim*, Black's Law Dictionary (12th ed. 2024) ............................................ 13

Fed. R. Civ. P. 24 ............................................................................................................ 6

HHS, HRSA, Calendar Year 2025 Requirements for FTCA Coverage for Health
    Centers and Their Covered Individuals:
    https://bphc.hrsa.gov/sites/default/files/bphc/data-reporting/pal-2025-01.pdf ...... 14

HHS, HRSA, NHSC, *NHSC Timeline*, https://nhsc.hrsa.gov/about-us/timeline ........................... 13

H.R. Rep. 102-823(I) (1992) ........................................................................................... 13

## INTRODUCTION

This matter is properly before the Court and within its jurisdiction. It should not be remanded to the state court from which it was removed. The Federally Supported Health Centers Assistance Act ("FSHCAA") required the Attorney General to remove this case to allow for adjudication, in federal court, of defendant Petaluma Health Center's federal immunity defense. 42 U.S.C. § 233(*l*)(1); *Blumberger v. Tilley*, 115 F.4th 1113, 1133 (9th Cir. 2024) (holding 42 U.S.C. § 233(*l*)(1) requires Attorney General to provide a "simple up-down certification" of defendant's deemed status to the state court). Because the Attorney General failed to fulfill this straightforward statutory obligation, Petaluma Health Center, Inc. ("Petaluma") removed this action itself, as Congress intended, under two separate federal officer removal statutes, 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1). Both employ broad language to serve a single purpose: "to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan,* 395 U.S. 402, 407 (1969) (construing 28 U.S.C. § 1442); *Blumberger*, 115 F.4th at 1137 ("[I]f one thing about § 233 is plain, it is that Congress did not plainly commit this inquiry to the unreviewable judgment of the Attorney General.").

Petaluma's removal was proper because the United States Department of Health and Human Services ("HHS") had deemed Petaluma to be a Public Health Service ("PHS") employee, under 42 U.S.C. § 233(g) and (h), when the alleged acts and omissions underlying Plaintiff's action arose. That deemed status provides Petaluma with the same protection, under 42 U.S.C. § 233(a), afforded to actual PHS employees: absolute immunity from any civil action or proceeding resulting from the performance of covered conduct—*i.e.*, "medical . . . related functions." 42 U.S.C. § 233(a), (g)(1)(A); *see Friedenberg v. Lane County*, 68 F.4th 1113, 1126 (9th Cir. 2023) (citing § 233 (g)(1)(A) as providing "in plain terms" that deemed PHS employees are protected "to the same

extent" under § 233(a) as actual PHS employees). The Court's jurisdiction to determine whether Petaluma is immune from Plaintiff's claims is a product of Petaluma's "final and binding" deemed federal employee status. § 233(g)(1)(F); *see Blumberger*, 115 F.4th at 1134 ("[I]t is an employee's deemed status, not covered status, that triggers the removal provisions of § 233(*l*)(1).").

The Government's position—that this Court cannot reach, much less adjudicate, the merits of Petaluma's claimed immunity—is contrary to statutory language, congressional intent, and binding precedent. Having deemed Petaluma and its personnel to be federal employees during the year at issue, the Government—now called to make good on its promise of absolute immunity—may not retroactively strip Petaluma of its deemed status. *Blumberger*, 115 F.4th at 1129. As the Ninth Circuit directed in remanding *Blumberger* to district court, this case should remain in federal court for a hearing as to whether § 233(a) immunity applies to the allegations against Petaluma. *Blumberger*, 115 F.4th at 1140 (citing § 233(c)); *see also Hui v. Castaneda*, 559 U.S. 799, 811 (2010) (immunity under § 233(a) "is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof pursuant to the ordinary rules of evidence and procedure").

## FACTUAL AND LEGAL BACKGROUND

### A. Petaluma's Deemed Federal Employment and Absolute Immunity

Pursuant to the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, 84 Stat. 1868 (1970), *codified at* 42 U.S.C. § 233(a) *et seq.*, PHS personnel are absolutely immune from any civil action or proceeding "resulting from the[ir] performance of medical, surgical, dental, or related functions" undertaken within the scope of their federal employment. 42 U.S.C. § 233(a). The statute provides a right be free from the cost and burden of litigation altogether by making the

"remedy against the United States" under the Federal Tort Claims Act ("FTCA") "exclusive of any other civil action or proceeding . . ." *Id.*

The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), as amended in 1995 and codified at 42 U.S.C. § 233(g) *et seq.*, authorizes the HHS Secretary to extend that "same" immunity to certain "federally-supported" health centers and their personnel. 42 U.S.C. § 233(g)(1)(A). To be deemed a PHS employee, health centers receiving federal funding under 42 U.S.C. § 254b, must apply "in such form and such manner as the Secretary shall prescribe." 42 U.S.C. § 233(g)(1)(D). On receipt of the application, HHS must make a prompt deeming determination. 42 U.S.C. § 233(g)(1)(E). A favorable determination confers "final and binding" federal status on the health center and its personnel for the following calendar year. 42 U.S.C. § 233(g)(1)(D), (F), (g)(4).

On notification of a state court action against any health center grantee (or its employee, officer, board member, or qualifying contractor), the Attorney General must appear in that court within 15 days to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such [defendant] is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1126–27 (requiring Attorney General to report Secretary's "ex ante" deeming determination). The Attorney General's appearance and report to the state court of the Secretary's deeming determination is "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity was acting within the scope of their employment or responsibility." 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1127; *see also id.* at 1134. The report thus requires the Attorney General to remove the case and creates "a rebuttable presumption . . . subject to the Attorney General's further

inquiry" that the defendant acted within the scope of their deemed federal employment for the conduct at issue. *Id.* at 1131.

"[I]t is an employee's deemed status, not covered status, that triggers the removal provisions of § 233(*l*)(1)." *Id.* If the Attorney General advises that a defendant is "deemed" but not "covered," "removal is necessary." *Id.* The dispute over whether the Secretary's deeming determination provides coverage—and therefore immunity—for the particular lawsuit is to be determined in federal court. *See Blumberger*, 115 F.4th at 1134.

If the Attorney General fails to appear and advise the state court as required by § 233(*l*)(1), the deemed PHS employee may remove the matter to the appropriate federal district court, without any time limit for doing so. 42 U.S.C. § 233(*l*)(2); *Blumberger*, 115 F.4th at 1140 (citing § 233(c)).

## B. Factual and Procedural Background

On June 21, 2023, Plaintiff filed the instant action in California state court. Notice of Removal at 1, ECF No. 1; *id.*, Ex. A (Compl.). The complaint alleges Petaluma breached duties to Plaintiff and the putative class members—arising from patient-provider relationships and, *inter alia*, the Health Insurance Portability and Accessibility Act ("HIPAA") and California's Confidentiality of Medical Information Act ("CMIA")—to protect their confidential information against loss/unauthorized use and, as a result, a party gained unauthorized access to/stole that information from Petaluma's electronic health record system. Compl. ¶¶ 1–11, 46–53, 93, 102– 113, 155–59.

On July 7, 2023, Petaluma delivered a copy of the complaint to HHS's Office of General Counsel and the local U.S. Attorney. *Id.* ¶ 28. Thirteen days later (July 20) the Attorney General, through a local designee, notified the state court that: (1) HHS has advised that Petaluma "has

been 'deemed' to be an 'employee of the Public Health Service,'" (2) HHS has not advised as to this case specifically, and (3) "the United States Attorney . . . will determine whether acts alleged fall within the scope of § 233(a)."[1] Notice of Removal, Ex. B.

On July 28, 2023, twenty-one days after notifying HHS, Petaluma removed this action pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1). *See* Notice of Removal, ECF No. 1. The United States moved to remand 30 days later, on August 28, 2023. *See* Non-Party United States' Notice of Motion and Motion to Remand, ECF No. 16. The Court denied the motion without prejudice on November 30, 2023, and stayed the action pending the Ninth Circuit's decision in *Blumberger v. Tilley*. ECF No. 41.

On September 9, 2024, the Ninth Circuit issued its decision in *Blumberger*, holding that § 233(*l*)(1) requires the Attorney General to report the HHS Secretary's ex ante deeming determination within 15 days and in so advising the court, remove the action. *Blumberger*, 115 F.4th at 1129.

The United States moved to remand this case a second time on February 14, 2025, based on its assertions that (a) *Blumberger* does not permit § 233(*l*)(2) removal when the Attorney General appears in state court (even if the appearance is defective) and (b) § 1442(a)(1) does not permit deemed PHS employees to remove an action to federal court.

## ARGUMENT

### I.    Plaintiff Waived Procedural Objections Under 28 U.S.C. § 1447

Because statutory removal procedures are modal "rather than jurisdictional" and "exist primarily for the protection of the *parties*," they are waivable, and waived when, as here, no *party*

---

[1] On October 12, 2023—ninety-seven days after receiving notice of the lawsuit—the Attorney General's designee informed Petaluma that it had determined the Complaint's allegations fall outside the scope of § 233(a). Decl. of Sapna Mehta, Ex. 1, ECF No. 63-2.

files a timely remand motion. *Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) (emphasis added); *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1029 (9th Cir. 2017) ("[T]ime limits . . . specified in 28 U.S.C. § 1446(b) are procedural rather than jurisdictional.").

"Non-party" United States, appearing under 28 U.S.C. § 517, *e.g.,* ECF No. 16, has no authority to raise procedural objections, which "exist primary for the protection of the parties." *Kelton Arms*, 346 F.3d at 1192–93. Although § 517 broadly authorizes the Government's *amicus* participation in any federal litigation—without leave of court or party consent—it neither confers party status nor otherwise allows the government to "initiate, create, extend, or enlarge issues." *United States v. Alkaabi*, 223 F.Supp.2d 583, 593 n.19 (D.N.J. 2002). The United States did not file a "timely motion" to intervene under Fed. R. Civ. P. 24, and is resisting, not seeking, intervention here. *See* ECF No. 16 at 14 n.13 ("Should the United States be forced to intervene in this case, [it] will move for dismissal . . . based on a lack of administrative exhaustion . . . .").

The language and structure of § 1447(c)—which differentiates between the parties and the court—makes clear that only parties may raise procedural objections, through a timely "motion to remand," under 28 U.S.C. § 1447(c). "The first sentence of § 1447(c) 'consigns procedural formalities to the care of the parties,'" whereas "[t]he second sentence 'assigns to the court concern for its jurisdictional prerequisites.'" *Kelton Arms*, 346 F.3d at 1192; *see also Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995) ("The inclusion of the term motion with respect to procedural defects . . . implies that a court must wait for a 'motion' *by a party* before it is authorized by § 1447(c) to remand."). Where, as here, the plaintiff, by inaction, "has acquiesced in federal jurisdiction . . . it hardly will do for the court *sua sponte* to interfere with the *parties' apparent choice of forum*." *In re Allstate Ins.*, 8 F.3d 219, 223 (5th Cir. 1993) (emphasis added). A "non-

party" cannot claim for itself authority that § 1447(c) reserves for parties, to the exclusion of the court.

## II.        Petaluma Properly Removed This Case Pursuant To 28 U.S.C. § 233(*l*)(2)

"Because [Petaluma] was a 'deemed' PHS employee under § 233 when the events giving rise to this action occurred, it ha[d] the right to remove and removal under § 233(*l*)(1) should be automatic upon the Attorney General's appearance." *Blumberger*, 115 F.4th at 1128–29. As the Ninth Circuit recently clarified, 42 U.S.C. § 233(*l*)(1) requires the Attorney General to advise the state court as to a defendant's deemed PHS employee status within fifteen days of receiving notice of the lawsuit and, in doing so, effectuate removal to federal court for adjudication of the deemed defendant's immunity defense. *Blumberger*, 115 F.4th at 1134–35. Removal is necessary even where the Attorney General disagrees with the deemed defendant's assertion of immunity and believes the case should not be covered. *Id.* at 1134 ("[I]t is an employee's deemed status, not covered status, that triggers the removal provisions of § 233(*l*)(1).").[2]

Here, the United States concedes the Attorney General failed to provide such advice—positive or negative—within fifteen days. Mot. at 4. The result, and remedy, ordered in *Blumberger* is thus appropriate here: the Court should deny the United States' remand motion and retain jurisdiction over this action to determine whether the Complaint's allegations arise out of conduct for which § 233(a) makes the remedy against the United States exclusive. *See id.* at 1139–40; *see also L.J.C. v. Dignity Health*, 2024 WL 4648147, at *4 (C.D. Cal. Oct. 31, 2024) ("Nonetheless,

---

[2] PHS Act immunity is broadly construed regardless of the availability of a damages remedy under the FTCA. *See Hui*, 559 U.S. at 807–08 (recognizing the scope of individual immunity and the scope of the damages remedy are "two separate inquiries"); *Krandle*, *Krandle v. Refuah Health Ctr., Inc.*, No. 22-CV-4977, 2024 WL 1075359, at *7 (S.D.N.Y. Mar. 12, 2024).

the Court cannot grant . . . the Government's motions to remand, given that the case needed to be removed—specifically by the Government—months ago").

As the Ninth Circuit explained in *Blumberger*, the "key to unlocking" the meaning of § 233(*l*) is in understanding the distinction Congress drew between the "different determinations made by different department heads." *Blumberger*, 115 F.4th at 1127–29. The FSHCAA provides the Secretary, who has "expertise in administering healthcare policies and services," exclusive authority to designate health centers and their personnel as federal employees for purposes of § 233(a) immunity. *Id.* at 1128. The HHS Secretary's prospective deeming determination establishes "that a qualified entity's employees have PHS status for a 'calendar year.'" *Id.* at 1128 (quoting 42 U.S.C. § 233(g)(1)(A)). That status is final and binding on both HHS and the Attorney General in any subsequent litigation arising out of "medical . . . or related functions" performed during the covered calendar year. 42 U.S.C. § 233(g)(1)(F). In contrast, the Attorney General, with expertise in representing the interests of the United States and defending the public fisc, is tasked with making a "litigation-specific" coverage decision and defending individuals or entities covered by § 233(a). *Blumberger*, 68 F.4th at 1128–29.

As *Blumberger* recognized, the Attorney General may, in the case of a "part-time contractor," provide a negative report if the acts or omissions identified in the complaint "fall outside the category of services for which the defendant is deemed, *such as a part-time contractor sued for negligent dental care*." *Id.* at 1130 (emphasis added). Critically, *Blumberger*'s example of non-deemed conduct references categories of services the statute, at § 233(g), *explicitly excludes* from the scope of deemed PHS status. *Id.* at 1130; 42 U.S.C. § 233(g)(1)(A), (5) (part-time contractors only deemed for "services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology"). Contrary to the United States' suggestion, Mot.

8

at 5, 7, the Attorney General may not foreclose jurisdiction when *it* believes conduct at the heart of a suit falls outside the "medical. . . or related services" encompassed within HHS's deeming determination. *Blumberger*, at 1137 ("Congress did not plainly commit this inquiry to the unreviewable judgment of the Attorney General.").[3] Its attempt to do so here merely repackages the Attorney General's (rejected) argument in *Blumberger*.

The Ninth Circuit squarely rejected the United States's primary argument—that a state court appearance like the one made here could "preclude[] . . . removal under § 233(*l*)(2)," Mot. at 6, holding that such a "narrow construction of § 233 . . . is not so unequivocally clear as to overcome the Supreme Court's strong presumption in favor of judicial review." *Blumberger*, 115 F.4th at 1135–36 (citing *De Martinez v. Lamagno*, 515 U.S. 417 (1995)); *see also id.* at 1139 ("The Attorney General was obligated to advise the state court in the affirmative of [the deemed] deemed status with respect to the relevant actions or omissions, *so it was also obligated to remove the case to federal court*.") (emphasis added). Attempting to sidestep *Blumberger*, the Government cites a prior, unpublished Ninth Circuit decision that failed to consider *De Martinez*. Mot. at 7 (citing *Sherman v. Sinha*, 843 F. App'x 870, 872 (9th Cir. 2021)). The decision, to the extent any of its reasoning survives after *Blumberger*, should not dictate the outcome here.[4]

The United States next argues that—even if *Blumberger* had controlled when the United States was initially notified of this action, the "Attorney General would have replied in the negative

---

[3] After removal, the Attorney General remains free to contest whether § 233(a) ultimately immunizes Petaluma against the Complaint's allegations. *Blumberger*, 115 F.4th at 1140 (instructing district court to, upon timely remand motion, hold a hearing to determine whether "'the case so removed is one in which a remedy within the meaning of subsection (a) . . . is not available against the United States . . .'") (quoting 42 U.S.C. § 233(c), deletions in original).

[4] The remaining cases the United States cites—three unpublished district court decisions that predate *Blumberger*—are no longer good law following publication of that precedential decision. *See* Mot. at 7.

in its notice to the state court . . . because . . . the alleged conduct falls outside of § 233(a)." Mot. at 7.[5] The argument resurrects an improper conflation the Ninth Circuit squarely rejected: a blending of the Secretary's ex-ante deeming determination with the Attorney General's ex-post, litigation-specific coverage determination. *See Blumberger*, 115 F.4th at 1134 ("[T]he Attorney General blended the two inquiries, inaccurately reporting [Defendant's] deemed status when it intended to report its ultimate coverage determination."). The former denotes whether the Secretary has determined that a qualified entity and its personnel have PHS status for a "calendar year." *Id.* at 1128. The latter, concerning whether Petaluma was acting within the scope of its deemed federal employment when allegedly failing to protect patient confidentiality, is to be determined by this Court, applying state law. *Kashin v. Kent*, 457 F.3d 1033 (9th Cir. 2006) ("[t]he law applicable to determine whether a government employee was acting within the scope of employment is the law of the place where the act or omission occurred").

This Court must follow *Blumberger* by resolving the question of whether specific conduct constitutes a "related function" at the "coverage" phase—*i.e.*, through the hearing mandated by § 233(*l*)(2) (or, alternatively, § 233(c)). *See Friedenberg*, 68 F.4th at 1127; *see also Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520, at *8 (S.D. Cal. Sept. 8, 2022); *Krandle*, 2024 WL 1075359, at *10, *13. The United States' attempted circumvention of *Blumberger* would permit the Attorney General to foreclose removal. The Ninth Circuit rejected this result. *See Blumberger*, 115 F.4th at 1134 (Attorney General's "ultimate coverage decision has no legal consequence" for § 233(*l*)(1)). And for good reason. The strong presumption of

---

[5] The United States' assertion that this case unambiguously falls outside the Secretary's deeming determination is belied by the Attorney General's failure to advise Petaluma of any decision for ninety-seven days—more than four times longer than the fifteen-day statutory period.

judicial review protects against the Attorney General's mistakes. *See*, *e.g.*, *Friedenberg*, 68 F.4th at 1130, 1131–32 (9th Cir. 2023) (concluding duty to report patient's probation violations was related function, and ordering substitution of United States over its objection); *C.K. v. United States*, No. 19-CV-2492, 2020 WL 6684921, at *6–7 (S.D. Cal. Nov. 12, 2020) (rejecting United States' argument that Chief Medical Officer's alleged failure to report and conspiracy to cover up sexual abuse did not constitute related function, and ordering substitution); *Krandle*, 2024 WL 1075359, at *1, *10, *13 (data breach).[6]

Accordingly, § 233(*l*) provides for federal jurisdiction—including an evidentiary hearing—to determine whether a deemed defendant's alleged conduct constitutes the performance of the "medical . . . or related functions" for which it was granted federal status. 42 U.S.C. § 233(*l*)(2) (staying all proceedings until court "conducts a hearing, and makes a determination" as to § 233(a) immunity); *Blumberger*, 115 4th at 1135 ("FSHCAA itself contemplates a federal forum for resolving any disputes over the employee's PHS status."). Judicial review is critical. Federal courts have repeatedly recognized—over the Government's objection—that deemed PHS employees' protection of confidential patient information is inextricably "interwoven" with their provision of medical care. *See, e.g., Doe*, 2022 WL 17663520, at *8 (S.D. Cal. Sept. 8, 2022) (data breach); *Krandle*, 2024 WL 1075359, at *10, *13 (same); *Mele v. Hill Health Ctr.*, 2008 WL 160226, at *3 (D. Conn. Jan. 8, 2008) (disclosure of patient medical information); *Kezer v. Penobscot Cmty. Health Ctr.*, No. 1:15-cv-00225, 2019 BL 141566, at *2, *6 (D. Me. Mar. 21, 2019) (unauthorized access); *but see Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252, (4th Cir. 2024).

---

[6] In *Krandle*, the Court thoroughly rejected the same arguments the United States raises here.

**III.    Petaluma Properly Removed This Case Pursuant To 28 U.S.C. § 1442(a)(1)**

As a deemed PHS employee with absolute federal immunity, Petaluma properly removed this action under 28 U.S.C. § 1442(a)(1), which affords a right of removal to "any officer . . . of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). A private entity acts under a federal officer when it acts on the officer's behalf under delegated authority, or "assist[s]" or "help[s] carry out" the official "duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (emphasis omitted). The statute, and in particular the words "acting under," are to be broadly construed. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021). The "test for removal," in other words, "should be broader, not narrower, than the test for official immunity." *Willingham v. Morgan,* 395 U.S. 402, 405 (1969).

Petaluma, a federally-supported health center and deemed PHS employee, qualifies as a person "acting under [a federal] officer" and raising a colorable federal defense for § 1442(a)(1) removal purposes. *See Agyin*, 986 F.3d at 174–75; *see also Blumberger*, 115 F.4th at 1123; *Friedenberg*, 68 F.4th at 1124. In *Agyin*, the Second Circuit endorsed the propriety of a deemed PHS employee's removal under § 1442(a)(1) where, as here, the defendant claimed § 233(a) immunity as a federal defense. *See Agyin*, 986 F.3d at 174. Faithful to the Supreme Court's instruction that federal officer removals "be liberally construed," and that the court must "credit [the d]efendants' theory of the case" in assessing its jurisdiction, *Agyin* held that a deemed PHS defendant acts under federal officers and raises a colorable federal defense in asserting § 233(a) immunity. *Agyin*, 986 F.3d at 174–75 (citing *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999)); *see id.* at 185, 187 (ordering United States' substitution).

When Petaluma provided medical services to Plaintiff (thereby collecting, generating and needing to protect the confidential information at issue), it was acting under a federal officer. As was true in *Agyin*, here, Petaluma received federal funding under 42 U.S.C. § 254b to provide medical care to a federally designated population; was a deemed federal employee; and operated subject to the same extensive federal requirements analyzed in *Agyin*. *Id.* at 172, 177–78. Examining FSHCAA's legislative history, the Second Circuit in *Agyin* determined that deemed PHS employees perform "a job that—in the absence of [FSHCAA] and its provision for deeming health centers and their staffs to be federal employees—the federal government would have had to perform itself," *i.e.*, "provid[ing] medical care to the indigent." *Id.*[7]

As to whether Petaluma has raised a colorable federal defense, *Blumberger* fully answers the question in the affirmative. There, tasked with assessing whether a deemed PHS defendant's assertion of § 233(a) immunity was sufficient to satisfy § 1442(a)(1)'s colorable federal defense requirement, the Ninth Circuit concluded that "HHS's [deeming] notice provides *unequivocally clear and certain support* for [the deemed physician]'s contention that he was acting 'pursuant to a federal officer's directions' when treating [the plaintiff] and that there is a 'colorable federal defense' pertaining to the medical malpractice claims." *Blumberger*, 115 F.4th at 1123  (emphasis added); *see also Friedenberg*, 68 F.4th at 1124. The decision aligns with a fundamental principle of officer removals: the ultimate validity of the federal defense "is a distinct subject . . . involv[ing]

---

[7] Indeed, prior to 1983, the federal government—through PHS employees—performed precisely the same work Petaluma now performs. When considering FSHCAA, Congress noted that, historically, more than one-half of health center staff were in the National Health Service Corps ("NHSC") program. H.R. Rep. 102-823(I), at 5 (1992). Thus, until 1983, the majority of health center staff were federal employees. *See id.* ("all NHSC assignees were members of the [PHS] until 1983"); HRSA, NHSC, *NHSC Timeline*, https://nhsc.hrsa.gov/about-us/timeline (after 1983, "NHSC members are no longer federal employees."). Part of Congress's motivation for FSHCAA was to address increased costs incurred during the nine-year period when the majority of health center staff *were not* PHS employees. *See id.*

wholly different inquiries . . . . [with] no connection whatever with the question of jurisdiction." *Mesa v. California*, 489 U.S. 121, 129 (1989) (quoting *Mayor & Aldermen of City of Nashville v. Cooper*, 73 U.S. 247, 254 (1867)); *see also Colorable Claim*, Black's Law Dictionary (12th ed. 2024) (to be sufficiently "colorable" to confer Article III jurisdiction, a federal defense need simply be "legitimate and [] reasonably [] asserted, given the facts presented and the current law"); *Mesa*, 489 U.S. at 136 ("[The] raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action . . . arises for Art. III purposes.").

Further, Plaintiff's allegations—that Petaluma failed to protect their confidential information—directly address conduct for which Petaluma possesses § 233(a) immunity. In its deeming application—which sets conditions for deemed status—Petaluma must assure HHS that it will (among other things) "implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* HHS, Health Resources and Services Administration, Calendar Year 2025 Requirements for FTCA Coverage for Health Centers and Their Covered Individuals at 14 (emphasis added).[8]

The United States' additional arguments against § 1442(a)(1) removal jurisdiction are likewise without merit. First, *Doe v. Cedars-Sinai*, 106 F.4th 907 (9th Cir. 2024), which the United States cites in support of its argument that healthcare providers receiving "incentive payments" from HHS cannot invoke § 1442, concerns neither deemed federal employees nor roles and responsibilities (like those at issue here) previously fulfilled by federal employees. 106 F.4th 907, 910 (9th Cir. 2024) (about HITECH Act). Second, a deemed PHS employee defendant

---

[8] HHS issues a new deeming application each calendar year. Accordingly, the publicly available version of the application is for deeming in calendar year 2026: https://bphc.hrsa.gov/sites/default/files/bphc/data-reporting/pal-2025-01.pdf.

may invoke both § 233(*l*)(2) and § 1442(a)(1), because the two "separate and alternative"

provisions confer distinct rights. *See Agyin*, 986 F.3d at 179–80. It is natural, and consistent with

statutory purpose, to read the two provisions as complementary mechanisms to ensure a federal

forum for individuals and entities asserting federal immunity. *See BP P.L.C. v. Mayor and City

Council*, 593 U.S. 230 (2021) ("[A] party may assert multiple grounds for removing a case to

federal court. . . ."); *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)

("[T]he Federal courts should not sanction devices intended to prevent a removal to a Federal

court where one has that right. . . ."). The Government itself has recognized this by invoking §

1442(a)(1) to effectuate removal on behalf of deemed PHS employees in numerous cases.[9]

## CONCLUSION

For the foregoing reasons, and those previously stated, this Court should deny Non-Party

United States' Motion to Remand and conduct the hearing to adjudicate the merits of Petaluma's

claimed immunity as required by 42 U.S.C. § 233(*l*)(2).

> Respectfully submitted,
> FELDESMAN LEIFER LLP
>
> Kathryn Doi (SBN 121979)
> 400 Capitol Mall, Suite 2580
> Sacramento, CA 95814
> T. 916.500.0755
> kdoi@feldesman.com
>
> FELDESMAN LEIFER LLP

Dated: March 14, 2025                    /s/ *Brendan M. Tyler*

---

[9] *See, e.g.*, *Oviedo v. Halbauer*, 655 F.3d 419, 422 (5th Cir. 2011); *see also, e.g., Nichols v. Sabzwari* , No. 17-cv-01621, 2017 WL 6389634, at *1 (D.S.C. Nov. 13, 2017) (noting U.S.'s § 1442(a)(1) removal and representation that dentist employed at grant-supported health center was "agent or employee of the USA"), *report and recommendation adopted,* 2017 WL 6367453 (D.S.C. Dec. 11, 2017); *Rosenblatt v. St. John's Episcopal Hosp.*, 2012 WL 294518, at *1 (E.D.N.Y. 2012); *Kidder v. Richmond Area Health Ctr.*, 595 F. Supp. 2d 139, 140 (D. Me. 2009).

Brendan M. Tyler

Matthew S. Freedus (admitted *pro hac vice*)
Brendan M. Tyler (admitted *pro hac vice*)
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
T. 202.466.8960
mfreedus@feldesman.com
btyler@feldesman.com

*Counsel for Defendant Petaluma Health Center, Inc.*