UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THURMAN JOHNSON,<br><br>       Plaintiff,<br><br>    v.<br><br>PETALUMA HEALTH CENTER, INC.,<br><br>       Defendant. | Case No. 23-cv-03777-VC<br><br>**ORDER GRANTING MOTIONS TO REMAND, STAYING REMAND PENDING FURTHER ORDER**<br><br>Re: Dkt. No. 63 |
| DARLENE GERSON, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>PETALUMA HEALTH CENTER, INC.,<br><br>       Defendant. | Case No. 23-cv-03870-VC<br><br>Re: Dkt. No. 63 |

      The motions to remand are granted. These two cases were not removable under either 42 U.S.C § 233(*l*) or 28 U.S.C. § 1442. This ruling assumes that the reader is familiar with the briefing and the transcript from the April 24 hearing. This ruling also assumes that the reader has reviewed *Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024), and the statute it interprets, a number of times. If you haven't done those things, you won't understand a word of this.

*   *   *

      Both sides misread *Blumberger* in ways that could create chaos throughout the Ninth Circuit in cases where defendants who claim to be "deemed employees" for purposes of section 233 have served the Attorney General with a state court complaint. So at the outset, it's worth

explaining at some length what *Blumberger* does and does not say.

Let's start with Petaluma Health, the health care provider that is the defendant in these cases. Petaluma Health argues that the majority opinion in *Blumberger* interpreted section 233(*l*) as contemplating that the Attorney General will advise the state court of only one thing after appearing within 15 days of notification of the lawsuit: whether the defendant was a "deemed employee" within the meaning of section 233 for any purpose during the time period covered by the lawsuit. If the answer is yes, according to Petaluma Health, the Attorney General must remove the case to federal court.

That's clearly wrong. Under *Blumberger*, it's not enough for the Attorney General to advise the state court that the defendant was a deemed employee in the abstract. Rather, the Attorney General, if she chooses to appear, must advise the state court within 15 days whether the defendant was a "deemed employee" under section 233 "with respect to the actions or omissions that are the subject of" the lawsuit. 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1127–31. In other words, the Attorney General must check with the Department of Health and Human Services (HHS) to see if the defendant is on the books as a recipient of funding under the relevant federal program and thus is a deemed employee, and then assess the allegations in the complaint. *Blumberger*, 115 F.4th at 1133.

Most deemed employees (including Petaluma Health) are designated as such with respect to their "performance of medical, surgical, dental, or related functions." 42 U.S.C. § 233(a); *Blumberger*, 115 F.4th at 1131. Therefore, under *Blumberger*'s interpretation of the statute, the Attorney General must advise the state court of two, related things upon appearing. First, whether the defendant qualifies as a "deemed employee" for the relevant time period. And second, whether the complaint's allegations fall into the category of conduct for which the defendant has been designated a deemed employee—that is, whether the complaint is making allegations about the defendant's performance of medical, surgical, dental, or related functions.

The majority in *Blumberger* assumed that these two inquiries are mechanical and easy to answer promptly upon appearing in state court within 15 days. That certainly seems to be true of

the first one—it's easy to determine whether a defendant is on the books with HHS. The second one will often be easy as well. For example, if it's a medical malpractice lawsuit, a quick glance at the complaint will confirm that the defendant has been deemed an employee "with respect to the actions or omissions that are the subject of" the lawsuit, because the lawsuit is obviously about the defendant's performance of "medical, surgical, dental, or related functions." But this second inquiry will not always be as easy or mechanical as *Blumberger* seemed to assume. That's because it might not always be easy to decide whether the conduct alleged in the lawsuit is a "related function." As the expression goes, on some level everything is related to everything. In these cases, for example, Petaluma Health alleges that its cybersecurity measures, taken to protect patients' confidential health information, are "related functions." Perhaps in a situation like this the Attorney General would need to conduct research, or consult with the client, before determining whether protecting patients' confidential health information is "related" to the performance of medical functions within the meaning of the statute, such that the Attorney General would need to enter a "yes" advisal when she appears in state court. Anyway, under *Blumberger*, the 15-day requirement clearly applies to both the first and the second inquiries.

As an aside, the majority in *Blumberger* perceived a difference between the second inquiry (whether the provider's deemed employee status applies "to the actions or omissions that are the subject of" the lawsuit) and yet a third inquiry: whether the provider acted outside the scope of their "employment." *Blumberger*, 115 F.4th at 1131–33. Although it doesn't matter for purposes of these two cases, it appears the majority may have gotten this wrong. Recall that the statute was originally enacted for the protection of actual federal Public Health Service employees. For an actual Public Health Service employee, the statute calls upon the Attorney General—when the employee is sued in state court—to certify that the employee was "acting in the scope of his employment" at the relevant time. 42 U.S.C § 233(c). Congress later added onto this statute the concept of the "deemed employee"—the health provider that receives federal funds and gets immunity protection in return. For a health provider that is a "deemed employee," the "scope of employment" inquiry might not make sense for a couple of reasons. First, the

3

statute contemplates that entities, as well as people, will be "deemed employees" for purposes of section 233. Indeed, the defendant in these cases is the Petaluma Health Center, not some individual person. What would it mean for an entity like this to be acting outside the scope of its employment, beyond the question whether the entity is "deemed" an employee with respect to the actions or omissions alleged in the lawsuit? Second, to the extent that a real person—an employee of a private health provider—is the defendant in the state court lawsuit and thus considered the "deemed employee," that person is not actually employed by the United States. So how is the United States supposed to know whether the person was acting outside the scope of their employment with the private health provider?

It's presumably for this reason that the statute does not actually call upon the Attorney General to make a "scope of employment" determination with respect to "deemed employees." Instead, it simply requires the Attorney General to advise the state court whether the defendant is a "deemed employee," and whether the defendant was designated as such "with respect to the actions or omissions that are the subject of" the lawsuit. The statute seems to contemplate that this advisal serves as the *substitute* for the normal "scope of employment" inquiry the Attorney General makes with respect to actual Public Health Service employees. *See* 42 U.S.C. § 233(*l*)(1) ("Such advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an . . . employee . . . was acting within the scope of their employment or responsibility."). In other words, with a "deemed employee," when the Attorney General advises that the conduct alleged in the lawsuit falls within the range of things for which the defendant was "deemed," the statute presumes that she has made a determination that the conduct alleged is within the scope of the defendant's "deemed" employment status.

In any event, *Blumberger* contemplates that there will be a "scope of employment" determination not just for actual employees of the federal government but "deemed" employees. Under *Blumberger*, this inquiry is distinct from the question whether the deemed employee was so designated with respect to the actions or omissions that are the subject of the lawsuit. And the Attorney General must conduct that latter inquiry at the outset of the lawsuit against the deemed

4

employee (if she chooses to appear). Petaluma Health is wrong to argue that this advisal does not come until later, and wrong to argue that the Attorney General must remove the case before that advisal is made.

Now let's turn to the government's equally flawed interpretation of *Blumberger*. The government asserts that *Blumberger* created a different rule for the statute's 15-day advisal requirement for medical malpractice cases compared to other types of lawsuits against providers who might be deemed employees. For medical malpractice cases, the government argues, *Blumberger* says the Attorney General must appear within 15 days and advise the state court on whether the provider (1) has been designated a deemed employee by HHS (2) with respect to the actions and omissions that are the subject of the lawsuit. But for other, unspecified types of cases that are not medical malpractice cases, the government says that *Blumberger* simply does not apply. The government does not explain exactly what it thinks the rule is for non-malpractice cases, but it seems to imply that in such cases the Attorney General has no obligation to make an advisal of any sort within 15 days.

That distinction is nowhere to be found in *Blumberger* or the statute. True, the state court lawsuit at issue in *Blumberger* was a medical malpractice action. But nothing in the statute suggests different treatment for medical malpractice actions compared to other actions that might also be about the defendant's performance of "medical, surgical, dental, or related functions." And the majority in *Blumberger* adopted an overall interpretation of the statute, not an interpretation of how the statute treats medical malpractice cases. The majority explains this quite clearly: if the Attorney General is served with a state court lawsuit by a defendant who claims to be a deemed employee, she has two choices. She can choose not to appear, in which case the defendant has the right to remove the case to federal court under section 233(*l*)(2). Or she can appear within 15 days, in which case under section 233(*l*)(1) she must advise the state court upon making the appearance whether the defendant is a deemed employee, and if so whether the defendant has been designated as such with respect to the actions or omissions that are the subject of the lawsuit.

5

At various points, the majority in *Blumberger* uses phrases like "medical conduct" to reference the statutory phrase "performance of medical, surgical, dental, or related functions." This is what the government invokes to argue that *Blumberger* draws some distinction between medical malpractice cases and other cases that might involve "medical, surgical, dental, or related functions." But it's clear, viewing the opinion in context, that no distinction was being drawn—the majority was just using phrases like "medical conduct" to refer in the shorthand to this clunky statutory phrase. This is exemplified by a subheading on page 1129 that says, "Section 233(l)(1) refers to enumerated categories of medical conduct." Anyway, it would be strange to try to read into the statute a distinction between medical malpractice cases and some other, undefined set of cases. As it is, the statute is essentially indecipherable. It would make no sense to add another layer of confusion—requiring the Attorney General, providers, and courts to ponder where the line falls between a malpractice case and a non-malpractice case—that finds no support in the text itself.

Why does the government attempt to squeeze out of *Blumberger* this distinction between malpractice cases and non-malpractice cases? It seems to be focused more on the quirky issue presented here, at the expense of clarity in the many future cases that will arise. Here, like in *Blumberger*, the Attorney General did not provide the advisal required by *Blumberger* within 15 days of being served with the complaint. Rather, like in *Blumberger*, the Attorney General simply appeared and provided an advisal along the lines of "we don't know yet." And so, like in *Blumberger*, the Attorney General failed to comply with the statute (as subsequently interpreted by *Blumberger*). Petaluma Health pounces on this failure to comply, arguing that a "we don't know yet" advisal is the equivalent of failing to appear, which would mean that Petaluma Health had a right under section 233(*l*)(2) to remove the case. The government wants to avoid such a ruling—hence the argument that *Blumberger* doesn't apply at all. The government seems to be arguing that the "we don't know yet" advisal is proper outside the context of a medical malpractice action. And at the hearing on these remand motions, the government seemed to suggest that, in non-malpractice cases, the Attorney General will continue to give "we don't

6

know yet" advisals, even in the wake of *Blumberger*.

None of this makes any sense. First, the Attorney General need not worry about the Court treating the "we don't know yet" advisal here as a failure to appear. Before *Blumberger*, it was commonplace for this type of advisal to be given within the first 15 days. It was also perfectly understandable, because the Attorney General had a different interpretation of the statute than the one adopted in *Blumberger*. That interpretation was reasonable: the question whether the defendant was a deemed employee "with respect to the actions or omissions that are the subject" of the lawsuit was understood to be something that might require research and investigation. It would be unfair to the Attorney General (and to the plaintiffs in these cases) to treat the reasonable pre-*Blumberger* decision to offer a "we don't know yet" advisal as a failure to appear.

The second thing that makes no sense is the government's suggestion that, even after *Blumberger* laid out a clear rule for compliance with section 233(*l*) in these cases—if the Attorney General appears, she must advise within 15 days of being notified of the suit whether the defendant is (1) a deemed employee (2) with respect to the acts and omissions that are the subject of the lawsuit—it would be okay for the Attorney General to appear and simply say "we don't know yet." Such an advisal, in the post-*Blumberger* world (with the understanding that *Blumberger* applies to malpractice and non-malpractice cases alike), may well constitute a failure to appear. When you're faced with a clear deadline under the law, you don't file something that says, "sorry, you'll need to wait a few months." Rather, you ask for an extension. In a case like this, you file something explaining to the state court that you need more time because the determination whether the acts or omissions alleged in the complaint involved the "performance of medical, surgical, dental, or related functions" is more complicated than normal, requiring research, consultation with the client, and the like. To the extent the government is truly planning, in state courts within the Ninth Circuit, to continue giving these "we don't know yet" advisals in cases that the government decides are non-malpractice cases, it should definitely reconsider that plan.

It's also worth emphasizing that in cases where the Attorney General needs more than 15

7

days to assess whether the provider was "deemed" with respect to the acts and omissions alleged in the lawsuit, she should not merely be seeking an extension; she should also be seeking a stay of the litigation pending her determination. After all, a health provider that is potentially protected by immunity conferred by federal statute should not be forced to defend itself in state court while the Attorney General makes up her mind about whether the provider might qualify for that immunity (and therefore about whether to remove the case to federal court). It's difficult to imagine a state court refusing to grant such a request, given the important federal interests implicated by the Attorney General's decision. And in the unlikely event that the state court declines to issue such a stay, the Attorney General should prioritize submitting the advisal as quickly as possible to prevent undue burdens on both the state court and the litigants. (The refusal to grant a stay may also support a writ action in the state appellate court or an action for relief in federal court.)

      In any event, how to handle this situation? Given *Blumberger*, the Attorney General was required to appear and give a yes-or-no advisal within 15 days of being notified of the lawsuit. But because it was pre-*Blumberger*, the Attorney General understandably did not comply with this requirement, handling it the way she reasonably thought was consistent with the statute. Petaluma Health removed the cases after the 15-day period even though the Attorney General appeared and hadn't made the advisal. The Attorney General now seeks a remand. What to do?

      As mentioned, Petaluma Health contends that the Attorney General's "we don't know yet" advisal should be treated as a nonappearance that triggered its right under the statute to remove after 15 days, but that would be unfair under the circumstances. Such an advisal, offered pre-*Blumberger*, is more analogous to an extension request, which would obviously be perfectly fine for the Attorney General to make, and perfectly fine for the state court to grant. (Again, presumably the state court would also stay the case pending the Attorney General's determination, to preserve the federal interest in protecting deemed employees from suit in state court.) That's not to say that a "we don't know yet" advisal could never be considered a nonappearance, but surely under these circumstances it was not.

8

Petaluma Heath next argues that none of this matters, because even if the Attorney General had given the state court a negative advisal, *that* would have given Petaluma Health the right to remove. But the statute doesn't say that. It says the Attorney General must remove if she appears and determines that the defendant is a deemed employee with respect to the acts or omissions that are the subject of the lawsuit. And it says the defendant can remove after 15 days if the Attorney General doesn't appear. But the statute does not say that the defendant can remove if the Attorney General appears in 15 days and provides a negative advisal. So the Court cannot simply assume that these cases would ultimately have been removed, and use this assumption to treat them as having been properly removed.

Petaluma Health responds that Congress can't possibly have intended to create a system where the Attorney General has the sole power to determine whether the case can be removed to federal court. But that's one of the few aspects of this statutory scheme that actually seems pretty clear. Petaluma Health advocates for a rule where the case could be removed no matter what: if the Attorney General doesn't appear, the defendant removes; if the Attorney General appears and gives the thumbs up, the Attorney General removes; and if the Attorney General appears and gives the thumbs down, the defendant removes. But if Congress really intended for every such case to be removed, why go through all this trouble of having the Attorney General appear in state court to give an advisal at all? Why not just enact a statute that says: "All state court cases where a defendant contends they are a 'deemed employee' within the meaning of section 233 with respect to the acts or omissions alleged in the lawsuit shall be removable for the purpose of enabling the federal district court to determine whether immunity applies?"

In short, these cases were not removable under section 233. The Attorney General did not fail to appear within 15 days. The Attorney General is best understood, under these quirky circumstances, as having appeared and obtained an extension of the deadline to provide the required advisal. In this posture, a provider defendant cannot remove under section 233.

*   *   *

Of course, none of this would matter if there had been an alternative basis for removing

9

the cases. Petaluma Health did not merely invoke section 233 in its notice of removal; it also invoked federal officer removal under 28 U.S.C. § 1442.

There seems to be a dispute in the case law about whether a defendant who is a "deemed employee" within the meaning of section 233 can also invoke federal officer removal. One view seems to be that a deemed employee can automatically invoke federal officer removal. *Agyin* v. *Razmzan*, 986 F.3d 168 (2d Cir. 2021). An opposite view seems to be that a deemed employee is necessarily precluded from invoking federal officer removal, because the narrower, more specific removal provision in section 233(*l*) forecloses invocation of the broader, more general one in section 1442. *K.C. v. California Hospital Medical Center*, No. 18-CV-06619, 2018 WL 5906057, at *5–6 (C.D. Cal. Nov. 8, 2018); *Nye v. Hilo Medical Center*, No. 09-CV-00220, 2010 WL 931926, at *2–3 (D. Haw. Mar. 11, 2010).

It seems possible that neither side of this dispute gets it quite right. Perhaps providers who are "deemed employees" within the meaning of section 233 by virtue of their receipt of federal funds to provide health care to people might also—depending on what else they do— meet the test for federal officer removal. Perhaps they are "acting under" a federal officer within the meaning of section 1442 because, in addition to receiving federal funding to provide health care, they are also somehow involved in an effort to assist the duties of a federal superior. *Doe v. Cedars-Sinai Health System*, 106 F.4th 907, 913 (9th Cir. 2024) (describing the type of defendant that can invoke federal officer removal). For example, maybe the provider is also participating in some specific health care research project under the supervision of CDC officials. If a provider that happens to be a deemed employee within the meaning of section 233 fits that description, it seems like the provider would be able to remove a case under section 1442 (in addition to, potentially, removing the case under section 233(*l*), if the Attorney General fails to appear within 15 days).

But if the defendant is merely receiving federal funds to support the provision of health care, that "deemed employee" status under section 233 can't be enough to support federal officer removal. Perhaps the confusion lies in the phrase "deemed employee." This is a poorly chosen

10

phrase in a poorly worded statute that is designed to confer upon medical providers who receive federal funding something much more modest than actual "employee" status. The phrase is simply meant to convey the idea that recipients of these funds can, in the performance of their medical, surgical, dental, and related functions, enjoy the same legal protections with respect to alleged misconduct that an actual federal employee enjoys. It is only in this limited respect—the ability to remove from state court and assert an immunity defense—that the provider is a "deemed employee." Being the recipient of federal funds and being subject to some conditions as a result of receiving those funds does not make the provider anything like an "employee" in the colloquial sense of the word. And it does not put the provider anywhere near the category of "acting under" a federal officer in the sense that the provider is assisting in the performance of the duties of a federal officer.

In these cases, there is no indication that Petaluma Health is anything other than a run-of-the-mill recipient of federal funds to subsidize the delivery of health care services to people in the community. This does not involve "acting under" a federal officer within the meaning of section 1442. In particular, the conduct complained of in this lawsuit—the storage of patients' medical information—was not done "acting under" a federal officer. *See Cedars-Sinai*, 106 F.4th at 914–18. So even if it might sometimes be appropriate for a provider that has "deemed employee" status to invoke federal officer removal based on activities beyond the provision of federally subsidized health services, removal under section 1442 was not proper here.

\*   \*   \*

Petaluma Health is certainly not to blame for having removed these cases improperly. Nor is the Attorney General to blame for having failed to provide a timely yes-or-no advisal in state court. Therefore, no result seems particularly fair in these two cases. But because they were improperly removed under the plain text of the statute, they must be remanded. On remand, presumably the Attorney General will promptly (perhaps even within 15 days) offer the advisal to the state court. If the advisal is in the positive, the Attorney General must, under the statute, remove the cases. If the advisal is in the negative, the cases must remain in state court.

In the ordinary course of things, the Court would at this point direct the Clerk of the Court to remand these matters to Sonoma County Superior Court. However, pursuant to Petaluma Health's oral request, the remand is stayed while Petaluma Health decides whether to appeal. It will be further stayed pending appeal if Petaluma Health decides to pursue one. The parties are directed to file a joint status report within 45 days of this ruling. If Petaluma Health chooses not to appeal, the Court will enter an order remanding these cases.

**IT IS SO ORDERED.**

Dated: May 30, 2025

VINCE CHHABRIA
United States District Judge